# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LITTON LOAN SERVICING, L.P., | ) | Appeal from the United States |
| | ) | Bankruptcy Court for the Northern |
| Appellant, | ) | District of Illinois, Eastern Division |
| | ) | |
| v. | ) | Bankr. No. 03 B 35580 |
| | ) | |
| INEZ EPHRAIM, | ) | Dist. Ct. No. 07 c 2605 |
| | ) | |
| Debtor-Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER ON APPEAL**

Appellant Litton Loan Servicing, L.P. ("Litton") timely filed this appeal from a final order of the bankruptcy court denying Litton's motion for relief from an automatic stay. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). The Court reviews the bankruptcy court's conclusions of law *de novo* and its factual findings for clear error. *In re Lloyd*, 37 F.3d 271, 274 (7th Cir. 1994); *Matter of UNR Indus., Inc.*, 986 F.2d 207, 208 (7th Cir. 1993). As explained below, finding no error of fact or law in the decision of the bankruptcy court, this Court affirms the bankruptcy court's judgment.

**I.     Background**

In 1972, Inez Ephraim ("Ephraim" or "Debtor")[1] purchased a residence in Chicago. Ephraim secured a loan for her residence with an FHA mortgage. In 1997, Ephraim obtained a loan from Freedom Mortgage Corporation ("Freedom") that was secured by a mortgage in favor

---

[1] On March 25, 2008, counsel for Ms. Ephraim filed a "Suggestion of Death Upon the Record," attaching a copy of Ms. Ephraim's death certificate. Citing Fed. R. Bankr. P. 1016, counsel contends that the death of the Debtor should not abate this appeal. Appellant has not taken issue with that position, and the Court therefore has proceeded to resolve the appeal.

of Freedom that was recorded as junior to the FHA mortgage. The Freedom note and mortgage were assigned to Provident Bank later in 1997.[2]

In 2003, Ephraim filed a Chapter 13 bankruptcy petition. She filed an original Chapter 13 plan of reorganization on September 26, 2003, and an amended plan ("Plan") on October 23, 2003. The terms of the Plan that are pertinent to this appeal include the following:

> 2. Debtor's claims against Provident Bank under the Illinois Interest Act (IIA) exceed the amount owed by debtors [sic] to Provident Bank. This plan provides that the claim of Provident Bank shall be fully satisfied by an offset against the debtor's claims under the IIA. Within 30 days of confirmation of this plan, Provident shall provide debtor's counsel with a release of its lien on the debtor's property.
>
> 3. Debtor intends to file an action to recover the amount by which debtor's claims under the IIA exceed the claim of Provident Bank. The net proceeds of such action or $5,000, whichever is less, will be paid to the Chapter 13 Trustee. It is estimated that this will be received within 12 months.

Debtor's Chapter 13 Plan ¶¶ G.2 & G.3; Debtor's Modified Chapter 13 Plan ¶¶ G.2 & G.3.[3]

On December 8, 2003, prior to the approval of the Plan, the Debtor filed an adversary proceeding in which, among other things, she objected to Provident's secured claim. See *In re Ephraim*, 318 B.R. 419 (Bankr. N.D. Ill. 2004). While the Debtor's adversary proceeding was still pending, the Debtor moved to confirm her Plan. On December 10, 2003, Provident filed a motion to lift the automatic stay along with an objection to the Plan. In its motion, Provident objected that "[t]he debtor, while owing an arrearage of no less than $2,520, fails to acknowledge any mortgage arrearage in the proposed Plan," and that "[t]he Plan fails to provide for any payment to Provident Bank." Provident Motion and Objection ¶¶ 8-9.

---

[2] The parties have identified Provident as Litton's "predecessor in interest," although it is unclear from the record before this Court precisely when Litton acquired Provident's interest.

[3] Paragraphs G.2 and G.3 are identical in the initial and amended Plans.

The bankruptcy court initially scheduled Provident's motion to lift the stay and to object to the Plan and the Debtor's motion for Plan confirmation for hearing on December 18, 2003, but later continued those matters to February 5, 2004. As Litton acknowledges, Provident's motion and objection were stricken when Provident failed to appear on February 5, 2004, and the Plan was confirmed that day as well.

Federal Rule of Bankruptcy Procedure 8002 provides that an appeal of a final order of a bankruptcy court, including an order confirming a Plan, must be filed within ten days of the entry of the judgment, order, or decree from which the appeal is taken. Provident did not file a notice of appeal within that time period. However, on March 17, 2004, Provident did file a motion to dismiss the Debtor's adversary action on the ground that the section of the Interest Act on which the Debtor's action was premised had been repealed. On September 13, 2004, the bankruptcy court granted Provident's motion and dismissed the adversary proceeding. *In re Ephraim*, 318 B.R. at 425.

On July 20, 2006, Litton filed a motion to modify the stay in the bankruptcy court. Litton offered three grounds constituting cause to modify the stay: (1) the debtor's house was not necessary for reorganization; (2) the Debtor was unwilling or unable to provide adequate protection to Litton; and (3) the Debtor was in arrears in her payments to Litton. On March 22, 2007, the bankruptcy court issued an order denying Litton's motion and ordering Litton to release its mortgage within thirty days. See Order, March 22, 2007 Trans. at 11.[4] In denying Litton's motion, the bankruptcy court reasoned that Litton was precluded from raising any of its arguments through a motion to stay because Litton was bound by the confirmed Plan, including with respect to the valuation of its claim, pursuant to Section 1327(a) of the Bankruptcy Code.

---

[4] A transcript of the bankruptcy court's March 22, 2007 order is included at pages 193-203 of the record filed before this Court on appeal. See [1] (bankruptcy court record).

3

*Id.* at 6; 10-11. The bankruptcy court viewed Litton's motion to stay as an impermissible collateral attack on the confirmed plan, because the issues that Litton raised should have been presented and resolved, if at all, in the Plan confirmation process. *Id.* at 6-7. The bankruptcy court concluded that Litton, as Provident's successor, "cannot now be heard to complain" about issues related to the confirmation of the Plan and thus entered an order denying Litton's motion. *Id.* at 10-11. Litton appeals from that order.

## II.    Analysis

The question in this bankruptcy appeal is whether Litton may overcome the failure of its predecessor in interest to timely prosecute its objection to Plan confirmation and to timely appeal from the bankruptcy court's order confirming the Debtor's Chapter 13 Plan. In 11 U.S.C. § 1327(a), Congress set forth the consequences that follow from confirmation by a bankruptcy court of a Chapter 13 debtor's Plan: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Consistent with the Congressional design, the Seventh Circuit consistently has rejected attempts by creditors and debtors to circumvent the terms of confirmed bankruptcy plans. See, *e.g.*, *Adair v. Sherman*, 230 F.3d 890, 894-95 (7th Cir. 2000); *Matter of Chappell*, 984 F.2d 775, 782 (7th Cir. 1993); *Matter of Pence*, 905 F.2d 1107, 1110 (7th Cir. 1990). As the court of appeals has explained, "[a]s a general rule, the failure to raise an objection at the confirmation hearing or to appeal from the order of confirmation should preclude attack on the plan or any provision therein as illegal in a subsequent proceeding." *Matter of Chappell*, 984 F.2d at 782; see also *In re Ross*, 162 B.R. 785, 789 (Bankr. N.D. Ill. 1993) ("The law is well settled that a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation").

Here, it is undisputed that, under the terms of the Plan, (i) the underlying debt to Provident was satisfied by an offset against a claim that the Debtor had asserted against Provident under the Illinois Interest Act and (ii) Provident would be required to provide a release of its lien within 30 days of confirmation. The terms of the proposed Plan thus gave Provident advance warning that it would not receive any payment other than the offset against the Debtor's IIA claim.

As the bankruptcy court found, Provident (i) had proper notice of the terms of the Plan and its opportunity to file an objection and (ii) in fact filed a combined motion for relief from the stay and to confirmation to the Plan. See Order, March 22, 2007 Trans. at 4. Provident's objection to the Plan referred to the absence of any provision for payments to Provident, confirming that Provident both had notice of the proposed terms and understood how those terms may have adversely affected Provident's interests. However, because Provident failed to appear on the date set for hearing on its motion and on the Debtor's motion for confirmation, the Court struck Provident's motion for want of prosecution and granted the Debtor's motion.

By failing to appear to prosecute its objection, Provident placed its interests on the road to jeopardy. But at that point, Provident still had options to resuscitate the objection through a motion for reconsideration in the bankruptcy court or a timely appeal to the district court. Provident failed to avail itself of either course. Instead, it resurfaced the issue in a motion to dismiss the Debtor's adversary proceeding, at which point Provident was looking for relief at the wrong time and in the wrong place. Litton's motion to modify the stay, the denial of which led to this appeal, likewise amounts to an improper collateral attack on the binding terms of a confirmed Chapter 13 Plan.

The fact that the Debtor ultimately did not prevail in the adversary proceeding on her theory that Provident's claim would be satisfied by an offset by recovery from the Debtor's IIA claims against Provident does not change the result. Valuation of a claim is done on a forward-looking basis, not with the benefit of hindsight. See *Pence*, 905 F.2d at 1110. Here, the bankruptcy court confirmed the Debtor's Plan with no debt owed to Provident and subject to dismissal of Provident's lien within thirty days. Notwithstanding the fact that the Plan reflected "an inflated estimate" of the value of the IIA claims, Litton "must live" with Provident's choice not to "attack[] the valuation head-on at the confirmation hearing" (*id*.), or appeal the order confirming the Plan. Having missed those opportunities, Litton cannot now mount a "collateral attack on the confirmation order" at a time in which "valuation may not be contested." *Id*. In short, as the bankruptcy court correctly held, "the fact that the damage claim turned out to be valueless is of no moment" as a matter of law (see Order, March 22, 2007 Trans. at 7-8), because Provident's failure to object or appeal "preclude[s] attack on the plan or any provision therein as illegal in subsequent proceedings." *Adair*, 230 F.3d at 894; see also *In re Ross*, 162 B.R. at 789 ("confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation").[5]

The Court respectfully disagrees with Litton's further contention (raised in its reply brief) that the general rule that a confirmed Plan is binding on all parties does not apply in the "unique set of facts" present here – namely, that the Plan was contingent on the success of the Debtor's claims under the IIA. As noted above, the Plan in question provided that the underlying debt to Provident was satisfied by an offset against a claim that the Debtor had asserted against

---

[5] Nor can Litton take the tack of the creditor in *Pence* and seek revocation of the order confirming the Plan, because a revocation action must be commenced within 180 days of the confirmation order (11 U.S.C. § 1330(a)) – a time that long since has lapsed.

Provident under the Illinois Interest Act and that Provident would be required to provide a release of its lien within 30 days of confirmation. The terms of the proposed Plan thus gave Provident advance warning that it would not receive any payment other than the offset against the Debtor's IIA claim in Debtor's prospective action. There was nothing in the Plan that made the satisfaction of Provident's claim and the release of Provident's lien contingent on any other event, including (as Litton now suggests) the outcome of the Debtor's adversary proceeding. In fact, one of the objections that Provident raised, but failed to prosecute, complained that "[t]he Plan fails to provide for any payment to Provident Bank." Notably, Provident did not object on the ground that the Plan only provided for a contingent payment to Provident. Nor did Provident preserve any objection that it was premature to confirm the Plan because the adversary proceeding had not yet been resolved. In view of Provident's unequivocal statement prior to the confirmation hearing that the Plan provided no payment to Provident Bank, Provident's successor-in-interest, Litton, cannot now be heard to argue that the Plan was ambiguous (or that it clearly mandated a contingent payment).

In any event, Litton's argument runs squarely into the holding of *Pence* (see above) and the bar on revocation of confirmation except in cases involving fraud (11 U.S.C. § 1330(a)), of which there is no allegation here. In *Pence*, as here, "the *plan* provide[d] for full payment of [Appellant's] claim in exchange for a release of the lien on [Debtor's] personal residence." 905 F.2d at 1110 (emphasis added). And, as here, the estimated valuation in the Plan proved to be inaccurate. *Id*. at 1108-09 (noting that the appraised value in plan was $58,500 and that a prospective buyer was willing to pay only $30,000). Yet the Seventh Circuit held that the Appellant could not mount a collateral attack on the confirmation order, noting that under Section 1330(a), fraud is the only basis for revocation of confirmation. *Id*. at 1110.

Finally, Litton's argues that the Plan never should have been confirmed in the first place because of a "proviso" in 11 U.S.C. § 1322 that states that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." That argument also comes too late.[6] Litton is not persuasive in contending that its failure to have raised the Section 1322(b) argument at an earlier stage of the case should be excused because the notion of an obligation on Litton's (or Provident's) part to release its security interest "was introduced into the record by the order that is being appealed." In fact, the Plan itself obligated Provident "to provide debtor's counsel with a release of its lien on the debtor's property" within 30 days of Plan confirmation. Provident thus was on notice – as was Litton when it succeeded to Provident's rights and obligations – of its obligation to release the lien. To the extent that Provident wished to challenge that provision, it was obligated to have done so either prior to or contemporaneous with the confirmation hearing or on reconsideration or appeal of the order confirming the Plan.

In any event, any suggestion that a Section 1322 argument was not available to Provident at the time is unavailing. Provident plainly had all of the tools it would have needed to construct the argument that Litton now raises for the first time – namely, that the Plan should not have been confirmed because it called for modification of the rights of the holder of a claim secured by an interest in the Debtor's principal residence in violation of 11 U.S.C. § 1322. In sum, then,

---

[6] The Debtor contends that the argument is too late because it was not made in the bankruptcy court, and therefore has been waived. As the Debtor notes, Provident did not attempt to interpose a Section 1322 objection in its motion for relief from stay and objection to plan prior to confirmation. Nor did Litton raise a Section 1322 argument in its motion for relief from stay filed after confirmation. Indeed, Litton did not even identify the Section 1322 argument in its "Statement of Issues to Be Presented" in this appeal. The Court need not decide whether Litton waived the argument by not raising it in the bankruptcy court, because the argument fails as an impermissible collateral attack in any event.

assuming that Litton's Section 1322 argument has not been waived, that argument constitutes an improper collateral attack on a confirmed Plan and thus cannot succeed in any event.[7]

**III.     Conclusion**

For the foregoing reasons, the decision of the bankruptcy court is affirmed.

Dated:  August 14, 2008                                         _____
                                                               Robert M. Dow, Jr.
                                                               United States District Judge

---

[7] The Debtor also challenges Litton's Section 1322 argument on the merits in a lengthy footnote. The Court need not resolve the whether the confirmed Plan's treatment of Provident's claim violated Section 1322, because Litton's argument can be disposed of on other grounds.

9